UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOHAMMED ADAM MIKAEL BIN MUSTAPHA DE WILDE, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRIP.COM GROUP LIMITED, JANE JIE SUN, and CINDY XIAOFAN WANG,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mohammed Adam Mikael Bin Mustapha De Wilde ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Trip.com Group Limited ("Trip.com" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.[1]

**NATURE OF THE ACTION**

---

[1] Unless otherwise stated, all emphasis is added.

1

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Trip.com securities between April 30, 2024 and January 13, 2026, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Trip.com securities during the Class Period and was economically damaged thereby.

7.      Defendant Trip.com has stated the following about its business:

> We are a leading global one-stop travel service provider, integrating a comprehensive suite of travel products and services and differentiated travel content. Leveraging our one-stop-shop model, high-quality service, and advanced technology, we are consistently expanding our global reach. We are the go-to destination for travelers in Asia, and increasingly for travelers around the world, to explore travel, get inspired, make informed and cost-effective travel bookings, enjoy hassle-free on-the-go support, and share travel experience.

8. Trip.com is incorporated in the Cayman Islands. Its principal place of business is located at 30 Raffles Place, #29-01, Singapore 048622. Trip.com does not have offices in the United States. As a result, this judicial district is a convenient forum to litigate the action, as New York City's international airports are located in Queens. Additionally, the statements at issue were transmitted into this judicial district over the internet.

9. Trip.com's American Depositary Shares ("ADS" or "ADSs") trade on the NASDAQ exchange under the ticker symbol "TCOM".

10. Defendant Jane Jie Sun ("Sun") served as the Company's Chief Executive Officer ("CEO") at all relevant times.

11. Defendant Cindy Xiaofan Wang ("Wang") served as the Company's Chief Financial Officer ("CFO") at all relevant times.

12. Defendants Sun and Wang are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

  (d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

  (e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

  (f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

  (g) approved or ratified these statements in violation of the federal securities laws.

14. Trip.com is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Trip.com under *respondeat superior* and agency principles.

16. Defendant Trip.com and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

17. On April 29, 2024, after market close, the Company filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2023 (the "2023 Annual Report"). Attached to the 2023 Annual Report were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Sun and Wang attesting to the

4

accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

18. The 2023 Annual Report contained the following risk disclosure:

***Our strategy to invest in complementary businesses and assets and establish strategic alliances involves significant risks and uncertainties that may have a material adverse effect on our business, reputation, financial condition, and results of operations.***
(Emphasis in original)

As part of our plan to expand our product and service offerings, we have made and intend to make strategic investments in the travel service industries in China and overseas. If the ADS or share prices of the public companies that we invest in decline and become lower than our share purchase prices, as we experienced historically, we would record changes in fair value in our consolidated statements of income/(loss) under U.S. GAAP, which in turn would adversely affect our results of operations for the relevant periods. In addition, if any of our investees in which our investments are classified as equity method investments incur net losses in the future, we will share their net losses proportionate to our equity interest in them.

Our strategic investments could also subject us to other uncertainties and risks, and our failure to address any of these uncertainties and risks, among others, may have a material adverse effect on our financial condition and results of operations:

- diversion of our resources and management attention;
- high acquisition and financing costs;
- failure to achieve our intended objectives or benefits in making these investments or revenue-enhancing opportunities;
- exposure to liabilities, third-party claims, or legal proceedings involving our invested or acquired business;
- potential claims or litigation regarding our board's exercise of its duty of care and other duties required under the applicable law in connection with any of our significant investments approved by the board; and
- failure to be in full compliance with applicable laws, rules, and regulations.

In particular, our strategy of investing in a complementary business could be adversely affected by uncertainties in the implementation and enforcement of the PRC Anti-Monopoly Law. Under the PRC Anti-Monopoly Law, companies undertaking mergers, acquisitions, or other transactions that may be deemed as concentrations in China must notify the anti-monopoly law enforcement authority of the State Council, which currently is the State Administration for Market Regulation, or the SAMR, in advance of any transaction where the parties' revenues in the China market and global market exceed certain thresholds and the buyer would obtain control of, or decisive influence over, the target. The anti-monopoly law enforcement authority will then conduct an anti-monopoly review of the transactions of which it was notified, including merger of

5

companies, possession of control over other companies through equity or asset acquisitions, or possession of control over, or the possibility of exercising decisive influence on, other companies through contract or any other means.

There are numerous factors the anti-monopoly law enforcement authority considers in determining "concentrations," depending on certain criteria. In light of the uncertainties relating to the interpretation, implementation, and enforcement of the PRC Anti-Monopoly Law, ***we cannot assure you that the anti-monopoly law enforcement authority will not deem our past and future acquisitions or investments, including the ones referenced herein or elsewhere in this annual report, to have met the filing criteria under the PRC Anti-Monopoly Law and therefore demand a filing for merger review***. The strengthened enforcement of the PRC Anti-Monopoly Law could result in investigations on our acquisition transactions conducted in the past and make our acquisition transactions in the future more difficult due to the prior filing requirement. Our strategic investments, including our historical transactions such as our acquisition of shares of Qunar in 2015 and any transactions to be contemplated in the future, have been and may continue to be subject to PRC regulatory authorities' scrutiny from anti-monopoly perspective from time to time.

***There can be no assurance as to whether the PRC regulatory authorities will impose any penalties or other restrictive measures on us or any other parties for our strategic investment***s. If we are deemed to have carried out a concentration of undertakings in violation of the PRC Anti-Monopoly Law, we could be subject to restrictive measures including an order to cease the concentration activities, a fine of up to 10% of our sales revenue from the previous year where such concentration has or may have the effect of excluding or restricting competition, or a fine of up to RMB5 million where such concentration does not have the effect of excluding or restricting competition, or more severe punitive fine for particularly serious circumstances, and the parts of the transaction causing the prohibited concentration could be ordered to be unwound**. The aforesaid penalties and restrictive measures could affect our business and financial results, and harm our reputation.** Further, substantial uncertainties remain as to whether our current business cooperation arrangements with Qunar would be deemed as violation to the PRC Anti-Monopoly Law in any material aspects, which will be subject to the discretion of the anti-monopoly law enforcement authority.

19. The statement in ¶ 18 was materially false and misleading at the time it was made because by stating that Trip.com's business "could" be adversely affected by anti-monopoly laws, it materially understated the risk facing Trip.com of regulatory enforcement in China, given its monopolistic business activities, as well as vigorous anti-monopoly enforcement by the Chinese government.

20. On April 11, 2025, the Company filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2024 (the "2024 Annual Report"). Attached to the 2024 Annual Report were signed certifications pursuant SOX signed by Defendants Sun and Wang attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

21. The 2024 Annual Report contained the following risk disclosure:

***Our strategy to invest in complementary businesses and assets and establish strategic alliances involves significant risks and uncertainties that may have a material adverse effect on our business, reputation, financial condition, and results of operations.*** (Emphasis in original)

As part of our plan to expand our product and service offerings, we have made and intend to make strategic investments in the travel service industries globally. If the ADS or share prices of the public companies that we invest in decline, as we experienced historically, we would record changes in fair value in our consolidated statements of income under U.S. GAAP, which in turn would adversely affect our results of operations for the relevant periods. In addition, if any of our investees in which our investments are classified as equity method investments incur net losses in the future, we will share their net losses proportionate to our equity interest in them.

Our strategic investments could also subject us to other uncertainties and risks, and our failure to address any of these uncertainties and risks, among others, may have a material adverse effect on our financial condition and results of operations:

- diversion of our resources and management attention;
- high acquisition and financing costs;
- failure to achieve our intended objectives or benefits in making these investments or revenue-enhancing opportunities;
- exposure to liabilities, third-party claims, or legal proceedings involving our invested or acquired business;
- potential claims or litigation regarding our board's exercise of its duty of care and other duties required under the applicable law in connection with any of our significant investments approved by the board; and
- failure to be in full compliance with applicable laws, rules, and regulations.

***In particular, our strategy of investing in a complementary business could be adversely affected by anti-monopoly laws in the relevant jurisdictions***. ***We may incur significant cost in an effort to comply with applicable anti-monopoly laws***. ***The interpretation, implementation and enforcement of anti-monopoly laws in some of jurisdictions where we operate are subject to uncertainties***. *As such, although we*

*intend to comply with applicable anti-monopoly laws, we cannot assure you that relevant authorities will agree with our interpretation of the applicable laws*. Our proposed investment or acquisitions may not pass anti-monopoly review by regulatory authorities, and could be subject to penalties or other restrictive measures that may have a negative effect on our business and financial results. *For example, we are subject to the PRC Anti-Monopoly Law, under which companies must notify the State Administration for Market Regulation, or the SAMR, in advance of any concentration of undertakings where the parties' revenues in the relevant markets exceed certain thresholds for review*. In light of the uncertainties relating to the PRC Anti-Monopoly Law, the SAMR may disagree with our assessment as to whether our past and future acquisitions or investments meet the filing requirement. *There can be no assurance as to whether it will thus impose any penalties or other restrictive measures on us.*

22. The statement in ¶ 21 was materially false and misleading at the time it was made because by stating that Trip.com's business "could" be adversely affected by anti-monopoly laws, it materially understated the risk facing Trip.com of regulatory enforcement in China, given its monopolistic business activities, as well as vigorous anti-monopoly enforcement by the Chinese government.

23. The statement contained in ¶¶ 18, 21 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendants recklessly understated the regulatory risk facing Trip.com as a result of its monopolistic business activities; and (2) as a result, Defendants' statements about Trip.com's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

24. On January 14, 2026, Bloomberg published an article entitled "China Starts Antitrust Probe of Trip.com Ahead of Travel Peak".

25. The article stated that "China is investigating [Trip.com] over alleged antitrust

8

conduct, taking aim at the country's dominant online travel platform[.]" It further noted that the "State Administration for Market Regulation accused [Trip.com] of abusing its market position and engaging in monopolistic practices." Further, it stated that "[t]he powerful agency, which in years past targeted online sector leaders including [Alibaba], didn't offer specifics in a one-line statement on its website. Trip.com said in a statement it will cooperate with the investigation."

26. The article further noted that "[s]crutiny of the [travel] sector has been growing for months[,]" and that in August, "Guizhou's market regulator summoned five online tourism platforms [. . .] to a meeting to discuss potential antitrust concerns."

27. In addition, it stated that, "[i]n September, the market regulator in Zhengzhou ***summoned Trip.com for violations of rules against setting "unfair restrictions" on merchants' transactions and prices***."

28. On this news, the price of Trip.com ADSs fell $12.90 per ADS, or 17.05%, to close at $62.78 per ADS on January 14, 2026. The next day, it fell a further $1.48 per ADS, or 2.35%, to close at $61.30 on January 15, 2026.

29. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Company securities publicly traded on the NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and

their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Company securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

32. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

33. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Company shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- As a public issuer, the Company filed periodic public reports;

- The Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging

   public disclosures, such as communications with the financial press and other similar reporting services;

- The Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

37. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

41. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or

12

deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Company securities during the Class Period.

43. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's' allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

44. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material

statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company personnel to members of the investing public, including Plaintiff and the Class.

45.  As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Company securities during the Class Period in purchasing Company securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

46.  Had Plaintiff and the other members of the Class been aware that the market price of Company securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Company securities at the artificially inflated prices that they did, or at all.

47.  As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

48.  By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Company securities during the Class Period.

# COUNT II
## Violations of Section 20(a) of the Exchange Act
## Against the Individual Defendants

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's business practices.

51. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

52. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

53. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 11, 2026

**THE ROSEN LAW FIRM, P.A.**
/s/ Phillip Kim
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
   lrosen@rosenlegal.com

*Counsel for Plaintiff*